COURT OF APPEALS
DECISION
DATED AND FILED

August 2, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP296-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF207

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MICHAEL G. DELANGUILLETTE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: PAUL BUGENHAGEN, JR., Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael G. Delanguillette appeals a judgment of conviction for second-degree sexual assault of a child, as well as an order denying his motion for postconviction relief. He argues he is entitled to plea withdrawal because the circuit court failed to apprise him that sexual contact must be for the purpose of sexual degradation, humiliation, arousal, or gratification. We conclude that even though the court failed in its mandated duties under WIS. STAT. § 971.08 (2021-22),[1] the record contains clear and convincing evidence that Delanguillette sufficiently understood the nature of the offense, thereby rendering his plea knowing, intelligent, and voluntary. Accordingly, we affirm.

## BACKGROUND

¶2 The State commenced this prosecution in 2019, alleging that nearly twenty years earlier Delanguillette had inappropriately touched Clarissa[2]—who was at the time eight or nine years old—while she was at her grandparents' ranch. Clarissa reported to law enforcement that Delanguillette had penetrated her vagina with his fingers, and Delanguillette admitted to authorities that he had sexually assaulted "several children" when he was working at the ranch—though he claimed he could not recall all of the specific circumstances.

¶3 Delanguillette and the State reached a plea agreement. In exchange for an indeterminate prison recommendation, Delanguillette pled no contest to second-degree sexual assault of a child, one element of which is that the defendant had sexual contact with the victim. *See* WIS. STAT. § 948.02(2) (1999-2000);

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Consistent with the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym when referring to the victim.

*State v. Bollig*, 2000 WI 6, ¶50, 232 Wis. 2d 561, 605 N.W.2d 199. "Sexual contact," as relevant here, is defined by WIS. STAT. § 948.01(5)(a) (1999-2000), which inserts a motive element requiring that the intentional touching be "for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant." During the plea colloquy, the circuit court did not advise Delanguillette of the definition of "sexual contact" or that proof of such a motive was required.[3] The court accepted Delanguillette's plea and imposed a twenty-year sentence consisting of ten years each of initial confinement and extended supervision.

¶4　　Delanguillette sought postconviction relief, arguing the motive requirement was an essential element of the offense and the colloquy was therefore insufficient under *State v. Bangert*, 131 Wis. 2d 246, 252, 389 N.W.2d 12 (1986). Delanguillette also alleged he did not know this information, resulting in a plea that was constitutionally infirm as it was not knowingly, voluntarily, and intelligently entered. The State agreed that the circuit court should proceed with a *Bangert* hearing involving the testimony of trial counsel about the extent of Delanguillette's knowledge prior to entering the plea.

¶5　　Following an evidentiary hearing, the court denied the motion, concluding that the purpose of the "sexual contact" was not an element of the offense of second-degree sexual assault of a child. Alternatively, the court concluded the State had proved by clear and convincing evidence that Delanguillette

---

[3] The elements sheet attached to the Plea Questionnaire/Waiver of Rights form, likewise, included a reference to "sexual contact" but did not specify that proof of a particular motive was required.

understood the nature of the charge within the meaning of WIS. STAT. § 971.08(1)(a). Delanguillette now appeals.

## DISCUSSION

¶6 A defendant seeking to withdraw his or her plea post-sentencing must establish a manifest injustice, which may be demonstrated by showing that the plea was not knowing, intelligent, or voluntary. *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482. On appeal, the State concedes that the purpose of the sexual contact is an element of the offense, *see State v. Jipson*, 2003 WI App 222, ¶¶8-10, 267 Wis. 2d 467, 671 N.W.2d 18, and that Delanguillette has satisfied *Bangert*'s first prong by demonstrating that the circuit court failed to sufficiently confirm Delanguillette's understanding of the nature of the charge, *see State v. Brown*, 2006 WI 100, ¶56, 293 Wis. 2d 594, 716 N.W.2d 906.[4] The dispute on appeal is whether the State has satisfied the second prong, in which the burden shifts to the State to prove by clear and convincing evidence that, notwithstanding the defective plea hearing, the defendant's plea was otherwise knowingly, intelligently, and voluntarily made. *See Jipson*, 267 Wis. 2d 467, ¶11.

¶7 We review whether a plea was knowingly, intelligently, and voluntarily entered as a question of constitutional fact. *State v. Trochinski*, 2002 WI 56, ¶16, 253 Wis. 2d 38, 644 N.W.2d 891. Under that standard of review, we will not upset the circuit court's findings of historical fact unless they are clearly

---

[4] We note the circuit court relied on *State v. Badzinski*, 2014 WI 6, 352 Wis. 2d 329, 843 N.W.2d 29, for the proposition that *State v. Jipson*, 2003 WI App 222, 267 Wis. 2d 467, 671 N.W.2d 18, and other similar cases are no longer good law. *Badzinski* did not explicitly overrule *Jipson* or *Jipson*'s predecessors. Moreover, *Badzinski*—which presented a jury unanimity issue as a result of the jury's questions during deliberations about the location of a sexual assault—cannot be read as impliedly reversing the several cases establishing what a defendant must understand about the purpose element to enter a valid plea. *See State v. Hendricks*, 2018 WI 15, ¶¶22-23, 379 Wis. 2d 549, 906 N.W.2d 666.

4

erroneous. *Id.* However, we determine de novo whether those facts establish the constitutional validity of the plea. *Id.* When assessing whether the defendant's plea was knowingly, intelligently, and voluntarily entered, the State may use the entire record to demonstrate Delanguillette's knowledge of the nature of the offense. *Bollig*, 232 Wis. 2d 561, ¶53.

¶8 Here, the record sufficiently establishes Delanguillette's awareness that his motive for the touching would be at issue in the prosecution. There is no question that Delanguillette was advised that "sexual contact" was something the State was required to prove. As to the motive-centric nature of that phrase, the criminal complaint—the allegations of which trial counsel reviewed with Delanguillette—included Clarissa's statement that she could feel Delanguillette's erect penis on her back as he groped her from behind. Clarissa also recounted hearing the "clink" as Delanguillette loosened his belt. Based on the allegations in the complaint, Delanguillette was aware that the victim was claiming the assault resulted in Delanguillette's arousal or sexual gratification. At the plea hearing, Delanguillette confirmed that he had read and understood the criminal complaint.

¶9 The State's other-acts motion is also significant evidence that Delanguillette understood the nature of the offense. The State's motion sought to admit evidence that Delanguillette had sexually assaulted two other named victims in a similar manner at the same ranch decades earlier. The motion included the State's assertion that the evidence was "offered for the limited and proper purposes of establishing the defendant's motive, his intent to sexually gratify himself … and his particular method of sexually assaulting young girls from behind." At the *Bangert* hearing, trial counsel could not recall "specifically how [she and Delanguillette] talked about" the purpose for the State's other-acts motion, but she acknowledged that she had reviewed the motion with Delanguillette, that they had

discussed "why something that is not charged would become an issue," and that she had given him a copy of the motion.

¶10 Moreover, as in ***Bollig***, Delanguillette's presence at hearings concerning the admissibility of evidence of prior sexual assaults further demonstrates his awareness. *See **id.***, ¶55. Trial counsel's statements at one of the hearings, though made in an attempt to diminish the significance of the other-acts evidence proffered by the State, illustrate that Delanguillette's motive for the touching was a key aspect of the case:

> So time passing really does matter, because you are asking to use these situations and have this testimony to show his state of mind. I mean that is the primary purpose. Motive is another way to think, what is going on in your mind. … Under 25 your brain is underdeveloped, and so the thinking and the way that you would have a state of mind or motive or intent at that age is not relevant to something you're doing when you're 40.

In granting the State's motion at the same hearing, the circuit court commented that the evidence of the prior sexual assaults was "offered for the limited and proper purposes of establishing the defendant's motive in this case to sexually gratify himself and his particular method of sexually assaulting young girls from behind." Shortly thereafter, the court again stated, "the defendant's motivation for sending [Clarissa] into the corner of his apartment was to sexually assault her from behind, that his actions were intentional, and his motivation was to sexually gratify himself." Delanguillette's presence in the courtroom when these statements were made implicate his knowledge of the nature of the offense.

¶11 Delanguillette argues that the foregoing is insufficient to satisfy the State's burden because there was "no mention of purpose of contact being an essential element of the offense that needed to be proven beyond a reasonable

6

doubt." Rather, he argues the statements in the complaint and other-acts litigation lead only to a potential that he could "independently surmise" that motive was an essential element. Whether Delanguillette in fact made this guess, he argues, "is speculative and unsupported by the record."

¶12 In our view, Delanguillette's argument impliedly elevates the State's burden beyond what is mandated by our case law. None of the cases he cites require the use of magic words like "essential element" in describing what a defendant must be told or understand about the offense. To the contrary, several cases cut against Delanguillette's arguments and show that concepts—not particular terminology—are key to a defendant's awareness. *See **Trochinski***, 253 Wis. 2d 38, ¶29 ("[A] valid plea requires only knowledge of the elements of the offense, not a knowledge of the nuances and descriptions of the elements."); ***State v. Robles***, 2013 WI App 76, ¶7, 348 Wis. 2d 325, 833 N.W.2d 184 (rejecting the defendant's argument that "a circuit court is *required* to say the word 'felony' or 'misdemeanor' during a plea hearing in order to adequately inform a defendant of the nature of a pending charge to which he or she is entering a plea").

¶13 The required understanding and knowledge that the State must prove is defined by reference to what the plea colloquy should have accomplished. *See **Bangert***, 131 Wis. 2d at 275. Here, the circuit court was tasked with ensuring that Delanguillette was aware of "the nature of the charge." WIS. STAT. § 971.08(1)(a). Though the court failed in that duty, we agree with the circuit court that the record contains clear and convincing evidence demonstrating that Delanguillette was aware that his motive would be a key aspect of the State's proof in the prosecution. This is not a case where the record is silent regarding the defendant's knowledge regarding an element of the crime. *See **State v. Nichelson***, 220 Wis. 2d 214, 225, 582 N.W.2d 460 (Ct. App. 1998).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.